# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

PAYCOM PAYROLL, LLC,                        )
                                           )
    **Plaintiff,**                          )
                                           )
**v.**                                      )          **Case No. CIV-23-735-G**
                                           )
PAY.COM US, INC. d/b/a PAY.COM             )
et al.,                                     )
                                           )
    **Defendants.**                        )

## <u>ORDER</u>

Now before the Court is a Motion to Dismiss (Doc. No. 34) filed by Defendants Pay.com US, Inc. d/b/a Pay.com ("Pay.com") and Paycomcy Limited d/b/a Pay.com ("Paycomcy"). Plaintiff Paycom Payroll, LLC has responded in opposition (Doc. No. 52) and Defendants have filed a Reply (Doc. No. 56).

### I.    *Plaintiff's Allegations and Procedural Background*

Plaintiff Paycom Payroll, LLC, a limited liability company with its principal place of business in Oklahoma, brings this action against Defendant Pay.com, a Delaware corporation, and Defendant Paycomcy, a limited liability company organized under the laws of the Republic of Cyprus and with its principal place of business in Limassol, Cyprus. *See* Am. Compl. ¶¶ 1-3 (Doc. No. 30).

Plaintiff offers payroll and human capital management solutions to businesses both in the United States and internationally. *Id.* ¶¶ 12-16. Plaintiff operates the website "paycom.com," as well as a mobile application, and engages in numerous marketing and sponsorship activities. *Id.* ¶¶ 17-19. Plaintiff owns several federal trademark registrations

for its family of PAYCOM trademarks, which Plaintiff uses "extensively in association with its business and marketing activities." *Id.* ¶¶ 21-24.

Defendants are separate but related entities who share a common executive, Tom Vaknin. *Id.* ¶ 8. Defendant Paycomcy owns the pay.com website and also owns the technology used to perform services through the pay.com website. *Id.* Defendant Pay.com is a marketing and sales company that does business through the pay.com website and provides a platform for processing services to merchants and vendors to facilitate online payments. *Id.*

Plaintiff alleges that Defendants, through the pay.com website and doing business as Pay.com, recently began marketing and selling payment processing software in the United States, including in Oklahoma. *See id.* ¶ 25. Plaintiff alleges that Defendants, in addition to using their own PAY.COM and PAYCOMCY marks, "interchangeably refer[] to themselves as Paycom and us[e] the PAYCOM mark." *Id.* ¶¶ 42-49. In this and in other ways, says Plaintiff, Defendants confuse consumers, "suggest[] that Defendants are . . . affiliated with" Plaintiff, cause "financial harm" to Plaintiff, and infringe upon Plaintiff's PAYCOM trademarks. *See id.* ¶¶ 26-61.

Plaintiff brings federal statutory claims for trademark infringement, false designation of origin, trademark dilution, and cybersquatting. *See id.* ¶¶ 62-92 (citing 15 U.S.C. §§ 1114, 1125(a), (c), (d)). Plaintiff also raises claims for common-law trademark infringement and unfair competition and for violation of the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, §§ 51-56. *See* Am. Compl. ¶¶ 93-102. Plaintiff seeks injunctive relief and various kinds of damages. *See id.* ¶¶ 103-108 & pp. 30-31.

After Plaintiff filed its Amended Complaint, Defendants submitted the instant Motion (Doc. No. 34), seeking dismissal due in part to a lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. The Court granted Plaintiff's request to conduct limited jurisdictional discovery. *See* Order of May 24, 2024 (Doc. No. 40). After that discovery had concluded, Plaintiff's Response (Doc. No. 52) and Defendants' Reply (Doc. No. 56) were filed, along with several sealed exhibits (Doc. No. 53, 57, 58, 59).

## II.   *Plaintiff's Burden to Establish Personal Jurisdiction*

When the court's jurisdiction over a defendant is contested, the plaintiff bears the burden of establishing personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). At the pleading stage, the plaintiff's burden is relatively light. *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992). Where, as here, the court considers a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff must make "a prima facie showing of personal jurisdiction to defeat the motion." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (internal quotation marks omitted). A plaintiff "may make this showing through affidavits or other written materials." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). For purposes of the plaintiff's prima facie case, the allegations in the complaint are accepted as true to the extent they are uncontroverted by the defendant's affidavits. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011).

III.    *Rule 4(k)(1)(A) and Minimum-Contacts Analysis*

To establish personal jurisdiction over a nonresident in this federal-question action, Plaintiff must demonstrate that each Defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"—in this case Oklahoma. Fed. R. Civ. P. 4(k)(1)(A); *see Dudnikov*, 514 F.3d at 1070.  Oklahoma has enacted a "long-arm" statute that authorizes its courts to exercise jurisdiction to the maximum extent permitted by the U.S. Constitution, as well as the Oklahoma Constitution.  *See Dental Dynamics*, 946 F.3d at 1228-29 (citing Okla. Stat. tit. 12, § 2004(F)).  Accordingly, the Court's inquiry is reduced to a single question: whether the Court's exercise of jurisdiction over Defendants is consistent with constitutional due process.  *See id.* at 1229; *Dudnikov*, 514 F.3d at 1070.

"The Due Process Clause authorizes personal jurisdiction" if the defendant "purposefully established minimum contacts within the forum state" and the exercise of jurisdiction "comport[s] with traditional notions of fair play and substantial justice." *Dental Dynamics*, 946 F.3d at 1229 (internal quotation marks omitted).  Depending on the facts, "an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction." *Old Republic Ins. Co.*, 877 F.3d at 903; *accord OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).

Here, Defendants challenge Plaintiff's ability to show minimum contacts that would support the exercise of either general or specific jurisdiction.  *See* Defs.' Mot. to Dismiss at 11-21.  Plaintiff does not dispute Defendants' contention that general jurisdiction is

lacking, instead arguing that the Court should exercise specific jurisdiction in this matter. *See* Pls.' Resp. at 17, 22; *see also* Defs.' Reply at 5.

### A. *Specific Jurisdiction*

A court may exercise specific jurisdiction over an out-of-state defendant if the plaintiff's lawsuit arises out of the defendant's contacts with the forum state. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (explaining that specific jurisdiction "depends on an affiliation between the forum and the underlying controversy" (alteration and internal quotation marks omitted)). Thus, to establish minimum contacts for specific jurisdiction, the plaintiff must show: (1) that the defendant "purposefully directed its activities at residents of the forum state"; and (2) that "the plaintiff's injuries . . . [arose] out of the defendant's forum-related activities." *Old Republic Ins. Co.*, 877 F.3d at 904 (alteration and internal quotation marks omitted). If the plaintiff makes this showing, the court may exercise specific jurisdiction unless the defendant presents a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted); *see also SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268, 1272 (D. Utah 2014).

### 1. *Minimum Contacts: Purposeful Direction*

The "purposeful direction" requirement "ensure[s] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Purposeful direction analyses traditionally tend to focus on a

5

defendant's contacts such as travels to the forum, communications with forum residents, the course of business dealings with forum residents, and so forth." *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013).

Courts have struggled to apply traditional due process principles—specifically, the concept of "purposeful direction"—to cases involving the internet. *See Shrader*, 633 F.3d at 1240. The "basic problem," as articulated by the Tenth Circuit, "is that, in a sense, the internet operates 'in' every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless." *Id.*; *see also Lacebark, Inc. v. Sakata Seed Am., Inc.*, No. CIV-12-746-D, 2013 WL 12086778, at *4 (W.D. Okla. Jan. 16, 2013) ("[I]n the context of internet activity, personal jurisdiction cannot be based simply on access to a website by residents of the forum state."). When alleged contacts with the forum state were made via the internet, the "purposeful direction" inquiry focuses on whether "the internet user or site *intentionally direct[ed]* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." *Shrader*, 633 F.3d at 1240. Specifically, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.* at 1241.[1]

---

[1] The Tenth Circuit has identified three distinct frameworks "for testing whether a defendant has purposefully directed its activities at the forum state." *XMission, L.C. v. PureHealth Rsch.* ("*PureHealth*"), 105 F.4th 1300, 1309 & n.9 (10th Cir. 2024). The parties here rely upon the harmful-effects test set forth in *Calder v. Jones*, 465 U.S. 783 (1984), and applied by the Tenth Circuit in other cases "involving the Internet," including *PureHealth*, *Dudnikov*, and *Shrader*. *PureHealth*, 105 F.4th at 1309 (internal quotation marks omitted).

Pursuant to this test, Plaintiff must show that Defendants' "intentional conduct" "targets and has substantial harmful effects in" Oklahoma. *PureHealth*, 105 F.4th at 1309 (internal quotation marks omitted). Specifically, Plaintiff must allege that Defendants committed: (1) "an intentional action"; (2) "that was . . . expressly aimed at" Oklahoma; (3) "with . . . knowledge that the brunt of the injury would be felt in" Oklahoma. *Dudnikov*, 514 F.3d at 1072. In other words, Oklahoma "itself must be the focal point of the tort." *Id.* at 1074 n.9 (internal quotation marks omitted).

As examples of intentional action "deliberately directed" at an audience in Oklahoma, Plaintiff points to emails sent by Defendants "to known Oklahoma residents for the purpose of soliciting their Oklahoma-based business." *Shrader*, 633 F.3d at 1241; Pl.'s Resp. at 17. Plaintiff here refers to instances where a merchant interested in using Pay.com's payment services would initiate the submission of an application form using a "Create Account" link on the pay.com website. *See* Pl.'s Resp. at 10-12, 17-18; T. Vaknin Dep. 56:8-59:10, 67:3-68:20 (Doc. Nos. 53-1, 57). After the application process was begun, the merchant's information, including address and telephone number, was stored in Defendants' database, and an email notification of that "lead" would then be sent to Defendants' employees. *See* T. Vaknin Dep. 57:25-59:10; T. Vaknin Dep. Ex. 3 (Doc. No. 53-2); T. Vaknin Dep. Ex. 12 (Doc. No. 53-6). The notification would then trigger a series of multiple follow-up emails to be sent by Defendants to the lead, reminding the merchant of the pending application and offering assistance with completing the process. *See* T. Vaknin Dep. 65:21-68:5, 68:21-77:18; T. Vaknin Dep. Ex. 4 (Doc. No. 53-3). The record reflects that at least 35 Oklahoma-based businesses have undertaken Defendants' account-

creation process, although none of these applicants were accepted as new customers.  *See* Am. Compl. ¶ 34; T. Vaknin Dep. Ex. 12; T. Vaknin Dep. 119:7-19.

Plaintiff asserts that these emails are analogous to the newsletter emails addressed by the Tenth Circuit in *PureHealth*.  *See* Pl.'s Resp. at 17-18.  In that decision, the Tenth Circuit found that a company that had "knowingly sent marketing emails to XMission's customers in Utah" was subject to personal jurisdiction in Utah.  *PureHealth*, 105 F.4th at 1304.  Defendants argue that their merchant follow-up emails are more akin to the emails at issue in *XMission, L.C. v. Fluent LLC* ("*Fluent*"), where the Tenth Circuit affirmed the district court's dismissal for lack of personal jurisdiction because a digital marketer's emails to persons within the forum state were sent not by the defendant but by a third-party distributor who was "indifferent to the physical location of the responder[s]."  *Fluent*, 955 F.3d 833, 847 (10th Cir. 2020).

While the emails cited by Plaintiff share features with both those in *PureHealth* and those in *Fluent*, the Court concludes that *PureHealth* controls and establishes that personal jurisdiction lies over Defendants in this action.  As in *PureHealth*, Defendants' emails were sent "directly by the defendant compan[ies]," rather than an unaffiliated third party, "to the forum state."  *PureHealth*, 105 F.4th 1306 n.6.  Although the testimony of Defendants' executive Tom Vaknin reflects that the transmission of the emails—to recipients both in Oklahoma and elsewhere—was an automated response, those emails identified a Paycomcy employee as the sender, were sent from a Pay.com email address, and asked the prospective customer to respond to that email address.  *See* T. Vaknin Dep. 58:8-60:24; T. Vaknin Dep. Ex. 4.  These emails stated that Pay.com would "love to hear from you and

8

see how we can help you accept payments" and that they are "[l]ooking forward to a fruitful collaboration." T. Vaknin Dep. Ex. 4.  The emails also asked the applicant to "[l]et us know if you are facing difficulties," and to "[l]et us know how we can be of assistance." *Id.*  The record therefore reflects that, akin to *PureHealth*, Defendants "[them]sel[ves] delivered emails" to Oklahomans and "had a business relationship with" Oklahoma prospective customers. *PureHealth*, 105 F.4th at 1311.

Although Defendants argue that the automated emails were not targeted to anything or anyone in Oklahoma, Defendants' database identified the leads as having Oklahoma addresses.  *See* T. Vaknin Dep. Ex. 12.  Defendants therefore "sent . . . emails to" the leads in Oklahoma "knowing they live in [Oklahoma]."  *PureHealth*, 105 F.4th at 1311.  It follows that subjecting Defendants to Plaintiff's claims would not improperly subject Defendants to this forum "solely as a result of random, fortuitous, or attenuated contacts" or due to "the mere foreseeability that [their] actions may cause injury in [this] jurisdiction." *Id.* at 1308-09 (internal quotation marks omitted).

Based on the above, the Court finds that Defendants sent emails to prospective customers in Oklahoma intending "to create effects specifically in the forum state." *Old Republic Ins. Co.*, 877 F.3d at 917 n.35.[2]

---

[2] Because Plaintiff has shown that Defendants purposefully directed their conduct at the forum state by knowingly sending emails to prospective customers residing in Oklahoma, the Court need not address Plaintiff's argument that purposeful availment is additionally demonstrated by Defendants' ownership and operation of the pay.com website.

9

### 2. *Minimum Contacts: Plaintiff's Injuries*

Next, Plaintiff must show that its "injuries . . . arise out of [Defendants'] forum-related activities." *Id.* at 904 (internal quotation marks omitted). In making this determination, the Court considers whether there is "an affiliation between the forum and the underlying controversy"—i.e., whether Plaintiff's claims "derive from, or [are] connected with," Defendants' activities conducted within Oklahoma. *Id.* at 908 (internal quotation marks omitted); *Fuld v. Pal. Liberation Org.*, 606 U.S. 1, 13 (2025) (internal quotation marks omitted).[3]

Plaintiff has presented evidence showing that Defendants repeatedly used the allegedly infringing mark in their interactions with prospective merchants. For example, Defendants included the Pay.com logo on every email. *See* Pl.'s Resp. at 11-12, 18; T. Vaknin Dep. Ex. 4. The Pay.com logo also appears on the pay.com website through which the prospective merchants submitted their applications to Defendants. Am. Compl. ¶ 42.

Plaintiff's Amended Complaint alleges that Plaintiff has "expended considerable amounts of time, labor, and money designing, developing, and protecting its rights in the Paycom Marks." *Id.* ¶ 22. Defendants' use of infringing marks when "target[ing] citizens of this district" "cause[d] confusion and harm" to Plaintiff and to Oklahoma consumers and was likely "to deceive consumers into believing that Defendants' products are

---

[3] The Tenth Circuit has used both "but-for and proximate causation tests" but "has not settled on a specific standard of causation for the purposeful-availment inquiry." *PureHealth*, 105 F.4th at 1212-13 & n.13. Plaintiff here "has alleged sufficient facts to satisfy both of these tests." *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1206 (D. Kan. 2016).

affiliated with, connected with, associated with, or endorsed by Paycom when they are not." *Id.* ¶¶ 11, 58. The Court therefore finds that Plaintiff's claims sufficiently "relate to" and are "connected with" the emails sent by Defendants to Oklahoma merchants who submitted applications on the pay.com website. *Pandaw Am., Inc. v. Pandaw Cruises India Pvt. Ltd.*, 842 F. Supp. 2d 1303, 1312 (D. Colo. 2012); *Fuld*, 606 U.S. at 13; *see also Inspired by Design*, 200 F. Supp. 3d at 1207.

### 3.   *Fair Play and Substantial Justice*

Although Plaintiff has satisfied its burden to show the requisite minimum contacts, the Court must still decide whether exercising personal jurisdiction over Defendants would "nonetheless offend traditional notions of fair play and substantial justice." *Newsome*, 722 F.3d at 1271 (internal quotation marks omitted). "Such cases are rare." *Id.* (internal quotation marks omitted). To defeat Plaintiff's prima facie showing, Defendants "'must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). Relevant considerations include:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* (internal quotation marks omitted).

Defendants argue that these factors weigh in Defendants' favor. *See* Defs.' Mot. to Dismiss at 20-21. Defendants highlight their lack of an Oklahoma presence and Plaintiff's

assertion of federal causes of action, as well as their unexplained conclusion that "resolution in Oklahoma courts is not more efficient." *Id.* at 21.

The Court is not persuaded, as Defendants have not made a specific showing of any "burden," and "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings*, 149 F.3d at 1096. In addition, Plaintiff brings claims under state law as well as federal law. *See* Am. Compl. ¶¶ 99-102. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *OMI Holdings*, 149 F.3d at 1096. Defendants have not presented a compelling case that the exercise of jurisdiction would be unreasonable here, and dismissal is not warranted under Federal Rule of Civil Procedure 12(b)(2).[4]

### IV.    *Defendants' Motion to Dismiss Count Four*

In Count Four of the Amended Complaint, Plaintiff asserts a claim for violation of the Anti-Cybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1125(d). *See* Am. Compl. ¶¶ 86-92. This statute was enacted to address "cybersquatting," "which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1057 (10th Cir. 2008) (internal quotation marks omitted). "The ACPA provides for liability if a person registers, traffics in, or uses a domain name that is

---

[4] Because Plaintiff has shown that the Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), the Court need not address Plaintiff's argument that Defendant Paycomcy is subject to personal jurisdiction under Rule 4(k)(2). *See* Pl.'s Resp. at 23-25.

identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark." *Id.* (citing 15 U.S.C. § 1125(d)(1)(A)).

Defendants seek dismissal of this claim for failure to state a claim upon which relief can be granted. *See* Defs.' Mot. to Dismiss at 24-31 (citing Fed. R. Civ. P. 12(b)(6)). In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To prevail on its cybersquatting claim, Plaintiff must show: (1) that its PAYCOM trademark "was distinctive at the time of registration of the domain name"; (2) that the pay.com domain name registered by Defendants is "identical or confusingly similar to the trademark"; and (3) that Defendants "used or registered the domain name[] with a bad faith intent to profit." *Utah Lighthouse*, 527 F.3d at 1057; *see also Khalik*, 678 F.3d at 1192 (explaining that a court may address the essential elements of the alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim").

Defendants challenge Plaintiff's pleading of the first element, arguing that the initial creation of the pay.com domain name was in 1995, which preceded Plaintiff's use of the

13

PAYCOM mark.  *See* Defs.' Mot. to Dismiss at 8, 26-27.  But Defendants rely upon a sworn affidavit attached to the Motion for this proposition—i.e., upon a "matter[] outside the pleadings,"[5] and so have not shown that dismissal by the Court under Rule 12(b)(6) on this basis would be proper.  Fed. R. Civ. P. 12(d); *see* Defs.' Mot. to Dismiss Ex. 3 (Doc. No. 34-3).[6]

Defendants next argue that Plaintiff fails to plausibly plead that the pay.com domain name is confusingly similar to the PAYCOM marks.  *See* Defs.' Mot. to Dismiss at 28-29. Defendants assert that, when comparing the domain name to the plaintiff's marks, "courts only consider the secondary domain name (the site name) without regard to the top level domain name (.com, .net, etc.)."  *Id.* at 28 (citing *Coca-Cola Co. v. Purdy*, 382 F.3d 774 (8th Cir. 2004)).  So considered, the secondary domain name of "pay" is not confusingly similar to PAYCOM, according to Defendants.  *See id.*

"In the cybersquatting context, 'confusingly similar' means that the plaintiff's mark and the defendant's domain name are so similar in sight, sound or meaning that confusion is likely."  4 *McCarthy*, *supra*, § 25A:51 (footnote omitted).  While "courts *generally* look to the second level domain name," Defendants' authority does not hold that the Court is

---

[5] The Court declines to enter the disputed domain name into a search field on a website and judicially notice the result as a fact in evidence, as requested by Defendants.  *See* Defs.' Mot. to Dismiss at 7 n.1, 8 & n.2.

[6] Moreover, Plaintiff argues that Defendant Paycomcy re-registered the pay.com domain name in 2022, "well after [Plaintiff's] trademarks had been federally registered and were therefore distinctive."  Pl.'s Resp. at 27; *see* Am. Compl. ¶ 30.  Although there is a split of authority, "[t]he majority rule is that a re-registration qualifies as a registration which can be a violation of the ACPA."  4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25A:52 (5th ed.).

not permitted to look at the ".com" aspect of Defendants' domain name, as requested by Plaintiff. *Coca-Cola Co.*, 382 F.3d at 783 (emphasis added); *cf.* 4 *McCarthy*, *supra*, § 25A:51 ("The addition in the accused domain name of generic or descriptive matter to the mark will usually not prevent a finding of confusing similarity."). Further, the Court finds that the parties' arguments on this point present factual disputes that are not properly resolved on a Rule 12(b)(6) motion to dismiss. *See* Defs.' Mot. to Dismiss at 28 (arguing that Plaintiff "has acknowledged that it has no right over the generic word 'pay'"); Pl.'s Resp. at 29 ("[Plaintiff] does not seek to 'monopolize' the generic word 'pay.'"); *see also Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 764 (N.D. Ill. 2008).

Finally, Defendants argue that Plaintiff fails to sufficiently plead that Defendants used or registered the domain name with a "bad faith intent to profit." *Utah Lighthouse*, 527 F.3d at 1058. The ACPA sets out a list of nine non-exclusive factors relevant to making this determination. *Id.*; *see* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX).

Having reviewed those factors together with the allegations of the Amended Complaint, the Court concludes that Plaintiff has pleaded facts that, taken as true, would plausibly prove that Defendants "intend[ed] to divert consumers from" paycom.com to pay.com—an indicator of bad faith—but also facts "tending to indicate an absence of bad faith intent to profit from the goodwill of the mark," such as Defendants' operation of a legitimate business that is not attempting to compete with Plaintiff. 15 U.S.C. § 1125(d)(1)(B)(i)(V); 4 *McCarthy*, *supra*, § 25A:53; *see, e.g.*, Am. Compl. ¶¶ 8, 12, 42-45, 52-61. Under the circumstances of this case, the Court finds that the determination of bad faith will require a fact-intensive inquiry that is not appropriately conducted in connection

15

with the Motion to Dismiss. *Cf. Crystal Tones, LLC v. Pyromatics Corp.*, No. 25-CV-235, 2026 WL 353520, at *18 (D. Colo. Feb. 9, 2026) (finding that plaintiff had not shown a likelihood of success on its cybersquatting claim presenting "underlying factual disputes" and "only speculation that [the defendants] used the term to garner goodwill from [the plaintiff's] reputation"); *Carnivale v. Staub Design, LLC*, 700 F. Supp. 2d 660, 669 (D. Del. 2010) (denying summary judgment where it was "necessary for a fact finder to weigh the statutory factors and other relevant evidence" to "make a factual determination on the existence of bad faith").

## CONCLUSION

Defendants' Motion to Dismiss (Doc. No. 34) therefore is DENIED.

This matter will be set for a status and scheduling conference on the Court's next available docket.

IT IS SO ORDERED this 24th day of March, 2026.

_____
CHARLES B. GOODWIN
United States District Judge

16